The first case this afternoon is UNITED ACCESS v. EARTHLINK. Mr. Bregolone. The court would like to suggest to both parties that we'd prefer to deal with the cross appeal in the main body of the argument. So try to keep in mind that we'd like to have a standard format of 11, 15, and 4. And if Mr. Gaudet, if you just absolutely need to say something in rebuttal at some point, we would give you a minute if it's absolutely necessary. But let's try to make it unnecessary. Excuse me, Mr. Bregolone, you're on. May it please the court. In line proved infringement at trial. The proof was entirely unrebutted as EARTHLINK put on no evidence of non-infringement. You're raising four claim construction issues. And I understand how the telephone device issue affected jury verdict. I cannot see how the other three claim construction issues affected the jury verdict. That is the telephone exchange, telephone wiring network, and signal interface. How does the outcome of those three claim construction issues have any bearing on what the jury did? Certainly, Your Honor. The simple answer to that is that the jury didn't have an opportunity to hear the infringement case that related to the central office implementation of the invention. Because the court granted summary judgment and excluded that entirely. Well, that's with respect to some systems, right? That was with respect to a significant amount of the systems. That was the basis for granting summary judgment as to those systems. But as to the systems that actually went to the jury, am I correct that those three claim construction issues did not affect the jury verdict? Well, Your Honor, I don't think that's correct. Because we don't know how the jury would have reacted to the correct claim construction. The presentation of the evidence was absolutely affected. But was there argument that there was non-infringement because these three limitations were not satisfied? Your Honor, essentially there was very little non-infringement argument by the defendant. Well, is the answer there wasn't any argument of non-infringement based on those claim constructions? There was a general argument, Your Honor. In closing, the defendants referred to a list of elements that the plaintiffs argued that they had shown. And they said, you can check them off the opposite way that we haven't shown these elements. So there was argument related to that. There was not evidence presented related to that. But you didn't make any argument that any of these three elements that are the subject of the three claim construction issues would have made a difference in the outcome or were not satisfied? Again, Your Honor, we believe it clearly would have made a difference had we been able to present the full case. But because we can't appeal a partial summary judgment in an interlocutory manner, we had to go through the entire trial. In line did. Well, put aside the summary judgment and the fact that you couldn't argue as to some systems before the jury because of the partial summary judgment. It's correct that these three claim constructions were not the basis for the jury's non-infringement finding. The court did not deny, of course, the JMOL based upon any of the claim construction issues. There is one other area where it did affect it. When the court later construed telephone wiring network and construed it, we had to argue at that time a more limited construction of telephone wiring network because of the court's prior construction of signal interface. So we were boxed in to a more limited construction of the telephone wiring network at that time. Well, looking at the term signal interface, it doesn't have, according to the experts in this trial and elsewhere, any common meaning. So you kind of have to go to the spec and pull out the specificities of its definition from that source, don't you? I disagree, Your Honor, because, for example, there really was no dispute among the parties as to what the signal interface was. The real dispute was where is it located? But telephone wiring network, the court adopted the construction you proposed, right? That was after the grant of summary judgment, Your Honor. That was after the initial claim construction. Then in the subsequent claim construction, we proposed a more limited definition at that point. And, in fact, we do attack that on appeal today. We ask for the original construction we had proposed. So that's how, in fact, the claim construction issues did alter the presentation of evidence and the verdict. But if I may finish my answer to Your Honor, Chief Judge Rader's question, Claim 1 of the 585 patent expressly states, quote, that the signal interface is located on the telephone wiring network between the telephone exchange and each of the residences. So in the claim language itself, the patentee took the trouble to actually state exactly the range where the signal interface was located, inexplicably, without even addressing that claim language. But then the specification goes on to say in some detail that you can't have the interface on the public side or you'll have the high frequencies interfering with the, and that's against federal regulations. And the federal regulations actually prevent or prohibit transmitting the high frequencies onto the telephone exchange. They do not prevent transmitting high frequencies onto the public trunk. That was the error and the confusion of the district court. The district court limited signal interface to be only on the local side of the public trunk. So it treated the public trunk, which isn't even mentioned in the claims, as if it were the telephone exchange, which is clearly not. Well, but the problem I have is if I'm reading this as one of skill in the art, I'm going to go over that specification language and say, well, they're not putting it on the public end of this equation. It's got to be in the local end. Wouldn't I reach that conclusion? No, Your Honor. I think not because you would start, of course, as we do with the claim language. And the claim language gives you the range where you can put that. Then you look at the specification, and the first thing you have to note is that the high frequency signals do not travel onto the telephone exchange. But the error of the district court is the district court added this public trunk limitation and said that- No, Your Honor. That's the purpose of the patent. If the signal interface is on the opposite side of the public trunk, then it performs its job, and it filters the high frequency signals and prevents them from going into the telephone exchange. Mr. Braggalone, we also have, though, the specs saying with specificity right at the crossover between column one and column two that the device is located where the telephones for multiple local networks meet the public interface. Isn't that pretty clear language? And, Your Honor, that is one recommended solution. The patentee actually broadly claimed it and then provided numerous solutions. In fact, he refers to it as one recommended solution. Oddly, the district court never focused on the fact that it was a recommended solution, but one that is used with a copper wire example. I'm reading back up just a line or two from that, up to line 62, and it starts not by saying this is a recommended solution. It says the present invention provides, et cetera, that device is located. So it was referring to the present invention, not just an embodiment. Should I give weight to that language? Well, Your Honor, that is one embodiment, but no, that... But it was described as the present invention, not an embodiment. Well, the present invention does prevent the signals from going on to the public exchange, but it doesn't say anything about whether it can be on this side or the public side of the public trunk. The public trunk is really irrelevant in terms of where the signal interface is located. That was the error that the district court made, as it seemed to equate public trunk with the telephone exchange. In addition, the error also that was made was that the district court construed telephone exchange to mean equivalent to the central office, essentially adopted Berkley's argument there. Telephone exchange is not so limited. Telephone exchange is simply, it can be a PBX. That is actually discussed in the specification and illustrated. The only limitation that was ever discussed was that it be a telephone exchange, not that it be the public telephone exchange. It can be a private branch exchange, such as the PBX. Is it your position that even if the specification discloses a suggested location for the signal interface, that that doesn't necessarily reflect what was set forth in the claims, that perhaps you just didn't claim that as a feature of the claimed invention? I would answer your honest question first and say yes. I believe our position is that the claim is broader than the recommended solution, the first recommended solution. There are two other solutions. Now, is that consistent with the prosecution history? Yes, absolutely. The prosecution history distinguishes some of the prior art based on the fact that it did not prevent, it either didn't use the telephone exchange element at all, or it didn't prevent high frequency signals from going on to the telephone exchange. Nothing was said about the public trunk. That was just something that the district court added. Similarly, the district court had a requirement that there be a point of convergence. There's an example in the specification of fiber optics, and the patentee actually says another implementation would be the fiber optic implementation where there is no point of convergence. There's no requirement of that because you don't have the attenuation that you have when you use mere copper lines. Could I ask you a question about obviousness before your time runs out? Yes. As I understand it, you agree that the Bellcore and Valenti prior art could be combined, but you say that what's missing from that combination is disclosure of a splitterless system. Is that correct? Among other things, yes. Well, what are the other things? First of all, while those two can be combined and the district court found that, they don't disclose all the elements of the claim. What other elements doesn't the combination disclose? Well, Your Honor, at the district court level, for example, I believe that the district court said that the Valenti reference Just tell me what other Valenti reference, for example, doesn't disclose any sort of distribution of the filters. It only shows a filter there. That may, in fact, be the splitter version. We're talking about splitterless, whether it discloses splitterless. We don't believe it does. What about the wearing testimony and what about your own expert's testimony at the bottom of 17-025? Well, as the court found that Mr. Waring did actually No, not found. Oh, I'm sorry. In granting the judgment as a matter of law, the district court did hold that Mr. Waring did not go through the proper analysis What about your own expert's testimony at 17-025? Doesn't Beckman agree that it discloses splitterless system? Your Honor, our expert never agreed Do you have the reference, sir? Your Honor, I can't look at it, but I do know from the record that the expert never agreed that it disclosed all the elements of the system. No, no, no. I ask, that's not the question. The question is whether your expert agreed that the combination disclosed a splitterless system. I don't believe so, Your Honor. Not in the sense that it disclosed all the elements. No, but that wasn't the question. The question was whether it disclosed this element. He seems to say at 17-025 that it discloses a splitterless system. The question was, the diagram reflects at least one instance where the telephone wiring is split and there's a low pass in front of the telephone. And he says the diagram does depict that. But, Your Honor, I don't believe that discloses splitterless technology, no. Also, the actual disclosure in Valenti, it merely shows what appears to be a filter there but it could also be a splitter. There is no statement that it's a filter versus a splitter. So there's a lot of assumptions that have to go into that before you could find a case of obviousness. Okay, Mr. Bregolone, thank you. You've consumed your time. Let's give you back three minutes. And will you give Mr. Gaudet, is it Gaudet or Gaudet? Gaudet. Gaudet, thank you. If you could give Mr. Gaudet an extra three minutes if he needs to use it. Thank you, and may it please the Court. I'm Matt Gaudet. I'm here on behalf of Earthlink. I want to begin with the line of questioning that Judge Dyke just posed because there is an additional citation in the record that, while I believe the one that you referenced, Judge Dyke, certainly does provide an admission from Mr. Beckman, Dr. Beckman, who was the plaintiff's expert, there is another one that's even clearer. That is at A17129, specifically beginning on page 29, line 5, and going to page 30 at line 2. And the question was put point blank. Do the Bellcore RFI and Valenti references, when read together, disclose every element of claim 61 of the 596 patent? And he said, I believe they mention every element. Now, to a jury, saying they mention would be enough, but it even got better because he was then impeached with his deposition testimony, which is the next part of that citation, the last line of which says, that would disclose every element. Now, the only difference between the splitterless system in claim 61 of the 596 patent and the splitterless system in the 446 and 585 patents are that the 446 and the 585 patents have an additional telephone. And so the question was, if you've got the whole system down, but lo and behold, instead of having one telephone in the home, there's a second telephone, does the prior art, what is Bellcore and Valenti in the eyes of one of ordinary skill, does it disclose to put a filter there as well? And the record on that, respectfully, was overwhelming. It was disclosed specifically in the Bellcore reference, and there's the specific document on page A18187, the discussion of figure 3.1. There's Mr. Waring's testimony about that. There was testimony from a third-party witness named Mr. Williams, who had done a voice-over data prior art system that had this same splitterless configuration, namely data comes into the home in a frequency above the voice band. It's then distributed throughout the telephone wires in the home, and you place low-pass filters in front of every telephone and the high-pass filter in front of the modem. That's all in the record, and Mr. Waring was asked. Now, it seems to me like we're getting confused over the difference between the 596 patents claim 61 and the other claims. There seems to be a difference there. The difference may be that it's only an additional telephone, right? Correct, Your Honor. The only difference is an extra telephone, and there was ample trial evidence that one of skill in the art and at the time of the invention would have known that if there is an additional telephone, you put the filter in front of that additional telephone as well. Were you making an anticipation argument or an obviousness argument? Throughout, I see only reference to each and every element, anticipation. I don't see you making efforts to show how one of skill in the art could bridge the gap between any missing elements. Your Honor, the answer to that question is we made both, and the jury returned a verdict on both, that the claims were both anticipated in view of the Bellcore reference and additional reference. It's not an issue here. And that it was obvious in view of the Bellcore reference in addition to the Valenti reference and knowledge of skill. And let me direct you to a specific site to answer your question, Your Honor. Mr. Waring testified on this point about whether or not it would have been obvious to place the low pass filter on the additional telephone at A16709. And he specifically said someone of skill in the art would understand that you have to do that, for example, the system that Mr. Williams... I guess the question I'm asking is you appealed on what? Obviousness. And the testimony there, Your Honor, was specifically referencing something outside of the Bellcore RFI to explain how one of ordinary skill in the art would bridge the gap to the extent there is a gap from the Bellcore RFI. But that is precisely what Mr. Waring did, again, at A16709. The next point I'd like to address, if there are no other questions on obviousness. The first question of whether or not in the event that... whether a change in claim constructions would impact the outcome here on infringement. And we certainly agree that changing signal interface or telephone exchange would have no impact on the jury verdict because those were not issues that were contested or were part of the affirmance of the verdict by the... or rather the sustaining of the verdict by the district court. But there was... I want to take that... You're saying you did not argue before the jury that there was non-infringement of the systems that were before the jury because of the failure to satisfy any of these three claim limitations. That is true with respect to telephone exchange and signal interface. With respect to the telephone wiring network, I'm pausing there for this reason. Telephone devices, that's only relevant insofar as that is one way in which telephone devices become a substantive element of the claim. But quite frankly, that's almost the hardest way. The term telephone devices is an element in the body of every one of these claims. Did you argue for a non-infringement verdict based on the construction of telephone wiring network? At trial. At trial, Your Honor, in the closing... Yes, in the closing argument, there was an argument that I believe... I believe in the closing argument there was... Your Honor, I'm going to have to check the record on that. There was an argument that related to whether or not signals have to travel from the DSLAM, rather the signal interface, back to the telephone exchange in a telephone voice band and in a remote terminal to central office configuration. They actually travel above the voice band. I just don't recall whether or not that was linked up to the telephone wiring networks. I would need to check the record on that, Your Honor. How do you get around the broad claim language on signal interface and its location? It's rare we have a location denoter in the claim language and it's there and it's broad. Your Honor, the claim language only defines location vis-à-vis other claim elements. It's defining a system. It's simply describing what goes where in the system. But the fundamental problem is that signal interface has no plain meaning. It doesn't mean anything. And I very much take issue... But we do know that it can be anywhere between the wiring network and the external source of information, right? The signal interface can be at a point of convergence on the local side of the public telephone network or the public telephone trunk line, which are... Why is it limited to that particular location? Your Honor, and this is, of course, the classic question of when you are importing a limitation versus simply... Absolutely. In this instance, it, on at least two instances, refers to the location as part of the invention. Now, there were several references to it being one recommended solution and I very much encourage you to look at the language where the patent talks about one recommended solution. When the patent was talking about alternative embodiments and one recommended solutions, it knew how to do it. That had nothing to do with the location of the signal interface. That comes up at column 5, lines 4 to 15. And what it says is that given that the signal interface essentially is located at a point of convergence, ordinarily what you would do is just put, kind of like a normal cable television system, you would put all of the television channels from that point going forward into the residences and users can just click the button and decide what they want to watch. Well, because of the limited bandwidth issue, it said the problem is you're not going to be able to get that many channels into each of these houses over the system. One recommended solution is to put the clicker, essentially the selection device, up at the signal interface. That was the context of when there are options and one recommended solution. That had nothing to do with the basic question of where is the signal interface in the first place. There is no language that ever suggests that's optional, that's merely a recommendation or anything else. The other point I want to address is with respect to the federal regulations, I believe that there was a statement made by the appellant in the argument that the federal regulations were merely talking about keeping signals off of the telephone exchange. And again, I would simply ask that you read the specification. That's just not what it says. The specification at column 48, this is lines 43 to 47, says, Part 68 of the FCC regulations in the U.S., for example, severely limits the energy that can be conducted onto the public network by signals above voice band and below 6 megahertz. It's not the telephone exchange, it's the public network, and the patent has already defined these points of convergence as the boundary point between the local line and an ordinary public trunk line, i.e., the public telephone network. Why isn't this analogous to a situation where an applicant describes the invention as consisting of elements A, B, and C, and then attaches a number of claims, claim 1, A and B, claim 2, B and C, claim 3, A, B, and C? Why isn't that the case here where the signal interface is claimed but not necessarily the location of the signal interface? Your Honor, the problem is that there is only one embodiment described here, and the signal interface every time- In my hypothetical, there's only one embodiment, A, B, and C, and then I elect to claim sort of a sub-combination as my first claim, A and B, elements A and B. If that was the intent here, then the patentee should have used language that had either a common meaning or defined something in the specification that way. The language that this patentee chose to use only references something that is defined as being located at a specific place, at a point of convergence that is on the local side, and the entire invention explains that that's the entire function of this. You don't think the patentee is entitled to the full breadth of the word's signal interface? Your Honor, the problem is that there is no full breadth of the word's signal interface. It doesn't have a meaning. The word signal has a meaning. The word interface has a meaning, but they mean nothing together, and the declaration that we put in in the district court, which is at A946, says exactly that. It says that that's from someone's skill in the art saying two engineers could not have a conversation with each other and use the phrase signal interface and know what the other meant unless they further defined it. There are no dictionaries. There are no treatises that tell us what that word means, and so by definition there is no full scope of that term that's being limited. Well, it may be a definition of what a signal interface is required to understand what that means, but that doesn't necessarily impose upon that definition a location for it, does it? Your Honor, if that was the end of the inquiry, I agree. The mere fact that something doesn't have a known definition doesn't mean that it would have to have a location, but it does mean you have to go to the specification to understand it, and when you go to the specification, it references points of convergence four times in the first paragraph. It references the invention as being located at the local side of that boundary line of the public network on multiple occasions, and under that circumstance, when you turn to the specification, the result is that this term has to have a location meaning. Your Honor, if I can make another point here about signal interface, which is I think we are in agreement that signal interface would not impact the result of the trial. Signal interface and telephone exchange also would not have impact. It wouldn't impact that other system either, the CO-based system, and the reason is the only differences between a remote terminal and a central office-based system are that the DSLAM in one of them is at the central office, and at the other, it's closer to the user at a remote terminal. For example, Earthlink doesn't even know which of its users are being serviced by which system. Everything else is completely identical. If it were the case that plaintiff would have been able to prove infringement based on central office systems, but for that construction, they would have won the trial as to remote terminal systems. The only difference, the only thing that kept those systems from being in the case was that one single issue. Well, that one single issue didn't exist for remote terminals, so by definition, whatever it was that caused them to lose remote terminals would have caused them to lose central offices as well, and so whatever happens on the signal interface and telephone exchange constructions, it's our position that the jury verdict would stand. Mr. Godet, I want to go back just a second to obviousness. Your whole argument was that, well, we use a standard ADSL system, and Belcour and Valenti disclosed the standard system. You at no point showed that you, your system, was actually practicing everything in the prior art, thus giving you some kind of a passage. In other words, there wasn't a direct obviousness analysis ever made. You kind of did a circuitous analysis via what may be in the standard or not in the standard. Am I correct about that? Your Honor, what we did do is that Mr. Waring testified specifically that the Belcour reference discloses all of the elements of the industry standard DSL system that Dr. Jackson had just walked through, and that testimony specifically is at, I'll get the reference. That's an anticipation argument. You didn't raise anticipation in your appeal brief. That's his only evidence that he's got, I think, to rely on, if I'm understanding correctly. No, Your Honor. Show me in the record where you equate your system to prior art. It's specifically, Your Honor. Not standards, which are then discussed as being part of the Belcour-Valenti system. I understand, Your Honor. Let me back up. There was an agreement in the record that our system was industry standard ADSL. Dr. Jackson's testimony was only about industry standards. There was no testimony about the Earthlink system versus some other system. So everyone in the case agreed from the outset, and that's how it was presented. And we can provide that. This isn't an argument. Did you ever compare the two systems using the asserted claims? Claim element one, you find it here in our system. You find it here in the standard. You find it here in the prior art. Claim element two, you find it in our system here. You find it in the standard there, and you find it in the prior art. Right on down through. Show me that in the record. Your Honor, that we did not do, and that's why the district court took the obviousness verdict away from us. And perhaps he was justified in doing so, right? Your Honor, this came after Dr. Jackson had done exactly that. He spent a day with claim charts doing exactly that analysis. And what we then did was have our expert say, with respect to all of the things you're accusing here, that is identical to what's shown in the Belcourt reference and the Valenti reference. And he testified point blank, it's all there. And he also brought in the Williams reference. Now, with respect to anticipation versus obviousness, there was a lot of testimony about Valenti. Valenti was only an obviousness reference. And likewise, there was testimony about how the Williams reference would be read in combination with the Belcourt reference by one skill in the art. There's kind of a, well, thank you, Mr. Godet. And I will, there's a citation I want to give you where. Sure, go ahead. I'll look for the citation during the. Okay, thank you. Thank you, Your Honor. Mr. Bragalone, you have three minutes. First, I want to echo a point that Your Honor, the Chief Judge made, that the examination in particular actually only related to one patent that the court pointed out at the record at A17129. That was only the 596, only. There was never any discussion as to whether all elements of any other patent were covered by any reference. Is that going to give you trouble with Claim 61, though? You do seem to have evidence that 61, every element, has been addressed by the experts in exactly the standard equation that I just gave you. I don't believe so, Your Honor. And this is, again, a response to Judge Dyke's question. That Dr. Beckman provided the only evidence regarding any combination, and he testified that a person of ordinary skill in the art would interpret the combination as disclosing splittered ADSL, not the splitterless system. And this was a key distinction. But he also, the examination seems to have elicited testimony that he said that these things were disclosed in the prior art, every element, right? No, what he's saying is, again, the approach that the defendants took here really colors the whole record because their entire approach to invalidity, whether by anticipation or obviousness that they have appealed, is that we're practicing the prior art. And as this court has said, that does not relieve a defendant of his burden to prove by clear and convincing evidence each and every element and to also show that they would be combined, that a person of ordinary skill in the art would understand that. Well, I don't see that you argued in your brief that they wouldn't be combined, and the district court said they would be combined. Yes, Your Honor. However, the only evidence, and again, I'll say this, the only evidence that was ever reduced on any combination was from Dr. Beckman, who said, I'm quoting here from page 17141, would lead them to construct systems that were much more like what we have been describing as the splittered ADSL system in the proceedings here. So what he's saying is, you're talking about splittered ADSL if you were to combine these. There's no evidence that any person of ordinary skill in the art would have combined these to come up with the splitter-less ADSL system. And then the point that was made by counsel with respect to the signal interface, that was on infringement. There was an agreement related to infringement. There was no showing by the defendant of each and every element of the test for invalidity, that the prior art actually disclosed each and every element. Thank you, Your Honor. Thank you, Mr. Bragalone.